Syllabus.

# Richmond.

## NORFOLK & WESTERN RAILWAY v. HARMAN.

### November 23, 1905.

1. INSTRUCTIONS DIRECTING A VERDICT—*Partial Case—Carriers—Case at Bar.*—In an action to recover damages for injuries inflicted on live stock and household goods, shipped under one bill of lading containing provisions applicable only to the live stock, it is not error to refuse to instruct the jury to find for the defendant unless they believe that the provision as to live stock has been complied with. The plaintiff may be entitled to recover for his goods although the provision as to live stock has not been complied with.

2. EVIDENCE—*Admissibility—Construction of Instruments—Functions of Court and Jury.*—It is the province of the court, and not of the jury, to determine upon the admissibility of evidence and to construe written instruments, and it is error to refer to a jury the determination of what, if any, parol evidence which has been received without objection, is in conflict with a bill of lading introduced as the basis of the action, and to disregard it.

3. BILL OF LADING—*Unintelligible Characters—Meeting of Minds.*—Unintelligible characters placed on a bill of lading which convey no meaning to a person of ordinary intelligence and which are not explained to the shipper, do not bind him, nor can the court take judicial notice of their meaning, or say, as a matter of law, that the minds of the parties met as to their meaning.

4. BILL OF LADING—*Limiting Liability—Reasonableness—Fair Contract—Unintelligible Characters.*—The test heretofore applied to determine the validity of a contract between a shipper and carrier limiting the amount for which the carrier may be held liable, in consideration of a reduced rate of carriage, has been, was the contract fairly entered into, and its terms just and reasonable. Even if the correctness of the test be conceded, it cannot be said to have

been fairly entered into if it contains unintelligible and unexplained terms to which the attention of the shipper was not called, and which are sought to be enforced against him.

Error to a judgment of the Circuit Court of Botetourt county, in an action of trespass on the case.   Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Jos. I. Doran, E. M. Pendleton* and *Marshall McCormick,* for the plaintiff in error.

*Benjamin Haden,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

O. C. Harman, the plaintiff in this cause, was a farmer, and had resided with his family at Ewing, in Lee county, Virginia, until the early part of November, 1904, when, determining to return to Botetourt county where he had lived formerly, he loaded in a box car his household goods, family supplies, wagons, utensils and animals (two mules, one horse, and a cow and calf), and accepted and signed a bill of lading from the Louisville and Nashville Railroad Company for the transportation of said articles by that company from Ewing, Va., to the terminus of that company's line at Norton, Virginia, there to be delivered to the Norfolk & Western Railroad Company for transportation to Cloverdale, Va., this being a station of the N. & W. Ry. Co. in Botetourt county nearest to the new home to which Harman was moving.

The car was duly transported without special incident by the L. & N. R. Co., and delivered at Norton to the N. & W. Ry. Co., and from thence by the latter company was duly transported to Roanoke, Virginia, arriving at the latter point on the night of November 12, 1904; Harman and his young son travel-

ling in the same train, and generally in the same car. While upon the yards of the N. & W. Ry. Co, at Roanoke, and being shifted on to the line of that company over which the car was to be transported to Cloverdale, the car was so roughly handled as to cause serious damage to the two mules, the family supplies, household goods, etc.; and to recover for this injury Harman brought this suit against the N. & W. Ry. Co.

There was a verdict and judgment in favor of the plaintiff for $500.00, with interest thereon from June 8, 1905, till paid, to which a writ of error was awarded by one of the judges of this court.

The first error assigned is that the trial court erred in refusing to give to the jury the following instruction, asked by the plaintiff in error, viz:

"The court instructs the jury that a bill of lading is a contract between the shipper on the one part and the carrier on the other, and they must be controlled in their verdict by it, and if the jury believe from the evidence that the plaintiff did not give notice to defendant's agent at Cloverdale, as required by the 12th clause of the bill of lading, then the jury must find for the defendant."

The 12th clause of the bill of lading is as follows:

"As a condition precedent to the shipper's right to recover damages for loss or injury to said animals, he will give notice in writing of his claim thereof to the agent of the railroad company or other carrier from whom he receives said animals before said animals are removed from the place of destination above mentioned, or from the place of delivery of the same to said shipper, and before said animals are mingled with other animals."

This bill of lading is of the class used by the initial carrier. *"For the transportation of live stock over its lines,"* while opposite the name of "consignee, destination, &c.," and under the heading, "description of stock," besides "3 head horses," "2 do. cattle," there also appear "H. H. Goods," "Rel. Val.

Lts., 5 cwt." Clearly, as is readily to be observed, clause 12 of the bill of lading could not have had and was never intended to have application to suits to recover damages for loss or injury to property other than "animals." In fact, it was nowhere claimed in the conduct of the case before the jury that this clause of the bill of lading had any such application. Defendant in error sued to recover for injuries, not only to his two mules, but to family supplies, household goods, furniture, etc., contained in the same car and set out in the bill of particulars filed with his declaration, amounting to $726.55, of which amount $300 was claimed for injuries to the mules; yet the trial court was asked to instruct the jury that he could not recover for the damages done to his household goods and other property unless he gave written notice to the agent at Cloverdale about the injury to his mules. If the full force and effect, as claimed by plaintiff in error, be given the bill of lading, it would not have justified the giving of this instruction, inasmuch as it could have no application to anything contained therein other than the "animals." For this all-sufficient reason, the instruction was rightly refused.

After the court had passed upon the instructions asked for by both parties, and after the argument had been partly made, it was asked by plaintiff in error to give the following instructions:

"B. The jury is instructed that the bill of lading introduced in evidence in this case, in all of its parts, constitutes the contract between the parties and no parol evidence is admissible to vary its terms. If such parol evidence has been before the jury, which is in conflict with this contract the jury must disregard it."

"C. If the jury believe from the evidence that the plaintiff is entitled to recover in this action, then in assessing such damages against the defendant, the jury must estimate the damages on the supposition that the plaintiff's goods, live stock, &c., were only worth $5.00 for every hundred pounds of weight they

weighed, and the burden of proof of their weight is on the plaintiff. In no event can the jury find on account of damage to the mules more than $5.00 per hundred of their weight, the court telling the jury in this case that the measure of the railway company's liability is to be determined by the weight of the articles loaded in the car."

Instruction "B" directed the jury to disregard any parol evidence which the jury might decide to be in conflict with the bill of lading. It did not tell the jury that any evidence had been admitted which was in conflict with the bill of lading, and which they should disregard, but left them to review the rulings of the court in admitting testimony, and to decide for themselves whether any evidence introduced did conflict with the bill of lading, what that evidence was, and to disregard it, when in point of fact the record discloses that no evidence was admitted by the court to which plaintiff in error excepted as inadmissible. It has been said again and again by this court that it is the duty of the court, and not the jury, to pass upon the effect of written instruments. *City of Richmond* v. *Gallego Mills,* 102 Va. 165, 45 S. E. 877, and authorities cited. It is also too well settled to admit of citation of authority, that the admissibility of testimony is for the court and not for the jury.

It was sought by instruction "C" to announce to the jury as the court's interpertation of the bill of lading, in the light of the evidence, that the measure of the plaintiff's damage was $5.00 for every hundred pounds that his property—his goods and live stock—weighed, when there is nothing whatever in the evidence of any agreement between the parties that the value of the plaintiff's property was only $5.00 for every one hundred pounds of weight, or was to be limited to that valuation in case of injury thereto by reason of the negligence of the carrier, unless it be that the characters, "Rel. Val. Lts. (or Ltd.) 5 Cwt.,"

appearing on the bill of lading as before stated, meant that the plaintiff and the defendant had agreed that the property should be considered as worth only five dollars for every hundred pounds of weight.

There is certainly no evidence in the record as to what the characters stood for, or that they had any meaning at all. We have taken occasion to examine the original bill of lading, and find that the characters in question are not only badly written, but have no such connection with the intelligible portions of the paper as would throw any light upon them as showing their meaning; and, therefore, it cannot be said that their meaning was discernible to a person of ordinary intelligence. There is no dollar mark in front of the figure 5, and its use would be meaningless, certainly to a person even of a high order of intelligence, in the hurry usual in the issuing and receiving of a bill of lading for goods shipped. But even if the characters of which we are speaking would bear the interpretation claimed for them, they would be glaringly inconsistent with the 10th clause of the bill of lading, in which a different and higher valuation is placed upon the mules.

Upon the record before us we do not consider that we are called upon to review the authorities cited by counsel for plaintiff in error for the proposition that a statute such as we have—sec. 1294c Va. Code, 1904—providing that no agreement made by a transportation company for *exemption* from liability for injury or loss occasioned by its own neglect or misconduct as a common carrier shall be valid, does not prohibit the making of a contract between a common carrier and a shipper *limiting* the liability of the former for injury or loss occasioned by its own neglect or misconduct as a common carrier. In the cases decided by this court, holding that a common carrier can make a valid and binding contract, not *exempting* the carrier from liability for the negligence of itself or its servants, but *limiting*

the amount in which the carrier shall be liable, in consideration of carriage at a reduced rate, it is declared that the test to be applied in all such cases is, was the contract fairly entered into. and are its terms just and reasonable.

If it were conceded that the terms of the contract here contended for by plaintiff in error are just and reasonable, it cannot, in the face of the facts to which we have adverted, be maintained that such a contract was fairly entered into by the defendant in error, and therefore instruction "C," asked by plaintiff in error, was properly rejected.

The third assignment of error relates to the modification of plaintiff in error's instruction "A," which as given—the modification being italicized—is as follows:

"The court instructs the jury that if they believe from the evidence that the plaintiff is entitled to recover in this action, in assessing damages against the defendant, they must estimate the damages upon the supposition that the plaintiff's goods, live stock, &c., were only worth $5.00 for every hundred pounds they weighed; that is to say, if the plaintiff's mule weighed 1,000 pounds then in estimating damages they must treat it as worth not more than $50.00 when received by defendant, and the jury can not find any more damages on account of injuries to the mule than the difference between $50 and the value of the mule when it was delivered by defendant to the plaintiff, and under this bill of lading plaintiff can recover no more than $50 for each mule injured; *provided the jury believes the bill of lading was a special contract, fairly made in consideration of a special rate of transportation, and that the minds of the parties fairly met on the agreement.*"

To what we have said in considering the second assignment of error, all of which is applicable to the assignment here under consideration, it need only be added that the Circuit Court, in the absence of evidence, could not, as a matter of law, say what these characters, "Rel. Val. Lts. (or Ltd.) 5 Cwt.," meant, or that the minds of the parties had met as to their meaning;

therefore, the modification of the instruction is no ground of complaint on the part of plaintiff in error, since the most it could reasonably ask was to have submitted to the jury the question whether the parties understood and agreed that the characters had the meaning contended for by plaintiff in error in the instruction "A" with the modification made to it by the court.

The remaining assignment of error is to the refusal of the court to set aside the verdict and grant plaintiff in error a new trial.

The evidence proves clearly the negligence—gross negligence—of plaintiff in error, resulting in injury to defendant in error's property, and the latter proves his whole bill of particulars filed in the cause, amounting to $726.55, while the jury found for him a verdict of $500.00 only, thereby leaving to plaintiff in error no ground whatever for complaint as to the amount of damages assessed against it.

The judgment of the Circuit Court is right, and will, therefore, be affirmed.

*Affirmed.*